IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TEVIN BIVINS, | |
| Petitioner, | |
| v. | Case No. 19-cv-150-SPM |
| ERIC WILLIAMS, | |
| Respondent. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Petitioner Tevin Bivins is a federal inmate presently housed at Federal Correctional Institution Greenville ("FCI Greenville") in Illinois. He filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Bivins seeks the expungement of a 2018 disciplinary ticket and restoration of forty-one (41) days of good conduct credit and associated privileges (Doc. 1, p. 4). The warden of FCI Greenville, T.G. Werlich,[1] filed a response to the Petition (Doc. 9), to which Bivins replied (Doc. 11).

### RELEVANT FACTS AND PROCEDURAL HISTORY

Bivins is serving a thirty (30)-year and one (1)-day aggregate sentence for interference with commerce by robbery; assault, resisting, or impeding certain officers; and use of a firearm during and in relation to a crime of violence (Doc. 9-1,

---

[1] As of March 29, 2020, Eric Williams replaced T.G. Werlich as the Warden of FCI Greenville. Werlich filed a Motion to Substitute Party on March 5, 2020 (Doc. 12). As no claims were brought against Werlich in a personal capacity and in accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Chief Judge Nancy J. Rosenstengel granted the motion in an Order dated March 5, 2020 (Doc. 13). Because Werlich filed the Response to Bivins's Petition, he is still cited in this Memorandum.

pp. 2–3). Bivins is projected to be eligible for good conduct release on August 22, 2036 (Doc. 9-1, pp. 3).

On January 14, 2018, Bureau of Prisons ("BOP") Officer Wade Joiner cited Bivins for violation of two Prohibited Act Codes in accordance with 28 C.F.R. § 541.3, Table 1 (2021): (1) a Code 108 offense for "possession, manufacture, introduction, or loss of a hazardous tool" and (2) a Code 305 offense for "possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels" (Doc. 9-3, pp. 1–2). *See* 28 C.F.R. § 541.3, Table 1 (2021). A Code 108 offense is of the highest possible severity level while a Code 305 offense is a moderate severity sanction (Doc. 9, p. 2). *See* 28 C.F.R. § 541.3, Table 1 (2021).

According to the incident report in question, the inspecting officer discovered an improvised heating device (referred to as a "stinger") and a commissary spatula inside the light fixture in the cell assigned to Bivins (Doc. 1, p. 10, Doc. 9-3, pp. 1–2). Bivins declined to comment (Doc. 9-3, p. 1). A copy of the incident report was provided to Bivins by the investigating officer, Lieutenant Kimberly Dugdale, who completed her investigation later that day (Doc. 9-3, pp. 1–2). Her comments indicate that Bivins only disclaimed responsibility for the spatula, as he stated "I didn't have whatever the 305 is. It was another inmate that put that in my cell" (Doc. 9-3, p. 2). Bivins claims that he stated that neither item belonged to him (Doc. 1, p. 3).

On January 18, 2018, a hearing was held before the Unit Disciplinary Committee ("UDC") (Doc. 9, p. 2, Doc. 9-3, p. 1). The incident was then transferred to the Disciplinary Hearing Officer ("DHO") because of the severity of the infraction, with the UDC recommending the maximum penalty (*Id.*). While Bivins was provided

with written notice of the DHO hearing and his rights, he did not elect to have a staff representative present and did not request the introduction of any witness testimony (Doc. 9-4, p. 1). At the DHO hearing on January 30, 2018, Bivins admitted that the items were his, stating that "[i]t was mine but I don't feel [that] it meets the elements of the [Code] 108" and that "[m]y cellmate had nothing to do with it" (Doc. 1, p. 11). The DHO hearing ruled that Bivins committed the offenses in question, sentencing him to loss of forty-one (41) days of good conduct time, thirty (30) days disciplinary segregation (suspended ninety (90) days), loss of ninety (90) days of email privileges, and loss of sixty (60) days of commissary privileges (Doc. 9-6, pp. 1–3).

In accordance with the BOP administrative grievance process, Bivins appealed the DHO ruling to the North Central Regional Office (Doc. 1, p. 16) and the Central Office for Inmate Appeals (Doc. 1, p. 17), respectively. *See* 28 C.F.R. § 542.15 (2021). The DHO's decision was upheld in both appeals (Doc. 1, pp. 16–17). Bivins then filed this Petition for Writ of Habeas Corpus before this Court on February 7, 2019.

## DISCUSSION

Inmates retain due process rights in connection with prison disciplinary proceedings. However, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum due process requirements for such proceedings are: (1) receipt of written notice of the charges in advance of the hearing; (2) an opportunity to be heard before an impartial decision maker; (3) the right to call witnesses and present evidence where the same will not be unduly hazardous to safety or correctional goals; and (4) a written statement as to the

evidence relied on and the reason for the decision. *Wolff*, 418 U.S. at 564–66; *Henderson v. U.S. Parole Comm'n.*, 13 F.3d 1073, 1077 (7th Cir. 1994).

In his Reply to Werlich's Response to his Petition,[2] Bivins accepted Werlich's version of the facts regarding the hearing and his subsequent effort to exhaust his remedies, with the exception of stating once more that he did not feel that the violation met the level of a Code 108 (Doc. 11, p. 1). Bivins admits that he received written charges prior to the hearing, that he had an opportunity to be heard or call witnesses at the hearing before an impartial decisionmaker, and that he was given a written statement as to the evidence upon which the DHO relied in rendering its decision (*Id.*).

Bivins relies upon four arguments to challenge the DHO's determination that he committed the Code 108 and Code 305 violations. First, he claims that a stinger does not meet the intent behind a Code 108 violation prohibiting inmates from possessing tools that are hazardous or could be used in an escape attempt (Doc. 1, pp. 3, 9). Second, he points to an affidavit by another inmate accepting responsibility for the contraband items (Doc. 1, pp. 3, 5–9). Third, he attacks the credibility of Officer Wade Joiner, the BOP officer who found the items in his cell (Doc. 1, pp. 3–4). Fourth, he claims that, since the items were found in the cell's common area, they could have belonged to his cellmate (Doc. 1, p. 4, 9).

Bivins argues that a stinger is not a "hazardous tool" in accordance with Code 108 (Doc. 1, p. 3, 9). In his Reply to Werlich's Response to his Petition, Bivins urges

---

[2] Bivins's Reply (Doc. 11) is erroneously labeled as a "Response" in the body of the document.

this court to compare the language of Code 108 to that of Code 331.[3] Because the stinger in question was composed only of a paper clip, an electric plug, and some wire, Bivins argues that a moderate severity sanction (Code 331) is more appropriate than a sanction of the highest severity level (Code 108) (Doc. 11, p. 1). Werlich argues that such an improvised heating device can be used to electrocute staff or to start fires and is thus a hazardous item that could be used for escape purposes (Doc. 9, p. 7). A Code 108 violation is described as follows:

> Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or *other escape paraphernalia*, portable telephone, pager, or other electronic device).

(Doc. 9, p. 7, citing 28 C.F.R. § 541.3, Table 1 (2021)) (emphasis added). Code 331 has similar introductory language, stating that sanctions may be imposed for:

> Possession, manufacture, introduction, or loss of a *non-hazardous* tool, equipment, supplies, or other non-hazardous contraband (tools *not likely to be used in an escape or escape attempt*, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) . . . .

(Doc. 11, p. 2, citing 28 C.F.R. § 541.3, Table 1 (2021)) (emphasis added). The list of "non-hazardous contraband" in Code 331 includes "such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements" (*Id.*).

While Bivins is correct that stingers are not explicitly listed in the definition of a Code 108 violation, Werlich argues that the decision to include the stinger within

---

[3] Bivins does not discuss Code 331 in his Petition, only in his Reply (Doc. 11).

the definition of "escape paraphernalia" was reasonable (*Id.*). Prison administrators are provided with considerable latitude in addressing safety and security in their institutions. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (citation omitted) (stating that prison administrators are granted "wide-ranging deference" to "maintain institutional security"). Additionally, Bivins should have been on notice that stingers fall within a Code 108 offense, as this was previously established at FCI Greenville by Warden Werlich in another disciplinary sanction. Response to Petition for Habeas Corpus at 6, *Robinson v. Cross*, No. 16-cv-00020-DRH-CJP (S.D. Ill. June 20, 2018). Bivins also argues that some state facilities sell stingers in the inmate commissary, indicating that they cannot be a hazardous item if they are provided to prisoners (Doc. 1, p. 4). While this is an interesting data point, this argument is immaterial and irrelevant to the matter in hand, as federal statutes govern the federal prison system. Bivins's primary argument thus cannot survive this Court's review of his Petition.

Bivins next argues that fellow inmate Edwin Marrero's affidavit admitting ownership of the stinger and spatula should be taken into account in this Petition (Doc. 1, pp. 5–9). Werlich responds that the affidavit was not presented at the DHO hearing and is therefore not part of the record to be considered on a petition for habeas corpus (Doc. 9, p. 8). The Seventh Circuit has established that "[d]ue process in this context does not include a right to submit further evidence on appeal." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). Bivins had ample opportunity to provide evidence and witnesses at his DHO hearing; his failure to do at that hearing bars his ability to provide additional evidence to contest his disciplinary sanction. Therefore,

Bivins's second argument cannot survive the Court's narrow review of the established record.

Bivins's third argument is an attack on the credibility of the officer who searched his cell, Officer Wade Joiner, claiming that he is "known . . . to plant contraband items" and that he "has been reprimanded and is believed to be on probation for questionable acts" (Doc. 1, pp. 3–4). Werlich responds that this Court's evaluation of the record does not require credibility determinations (Doc. 9, p. 9, citing *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)). The Supreme Court is clear that inmates are not afforded full due process protections and that the "some evidence" standard "does not require . . . independent assessment of the credibility of witnesses." *Hill*, 472 U.S. at 455. The DHO made its assessment based on "some evidence" of Bivins guilt, as the items were found in the cell assigned to Bivins and he admitted that they were his (Doc. 1, p. 11). Thus, Bivins's credibility argument cannot survive the deferential standard of review here.

Bivins's final argument is that, as the items were found in the cell's common area (and thus could have belonged to his cellmate), his rights under the Fifth Amendment to the United States Constitution were violated[4] (Doc. 1, p. 4). Werlich states once more that Bivins admitted that the items were his (Doc. 9, p. 10). Moreover, Werlich argues that caselaw in the Seventh Circuit does not provide that

---

[4] It is unclear exactly how Officer Joiner listing Bivins as the only occupant of the cell in his incident report (Doc. 9-3, p. 1) was a "direct violation of [his] Fifth Amendment right," as Bivins argues (Doc. 1, p. 4). The only potentially relevant provision of the Fifth Amendment is the right to due process of law. U.S. CONST. amend. V. However, inmates are not entitled to full due process rights under the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

an inmate can escape disciplinary liability for contraband via an argument that the item belonged to his or her cellmate (Doc. 9, p. 10).

The Seventh Circuit has clear precedent establishing that the argument that contraband belonged to an inmate's cellmate does not vitiate a disciplinary finding. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (stating that the fact that concealed weapons belonged to one of four cellmates met the "some evidence" standard). *Hamilton* states that such constructive possession does not create an issue in meeting the "some evidence" standard. *Id.* Additionally, BOP guidance is explicit that all inmates have a duty to ensure that their cells are free of contraband items. *Santonio House v. Daniels*, 637 F. App'x 950, 951 (7th Cir. 2016) (citing Inmate Discipline Program, Program Statement 5270.09, Appendix C (Bureau of Prisons 2012)) ("All the occupants had a duty under prison rules to keep their cell free of contraband") (*See* Doc. 9-10, p. 39). Thus, even if Bivins had provided evidence to establish that the contraband items were not his, the fact that they were found in a cell he shared meets the "some evidence" standard.

## Conclusion

For the reasons set forth above, the Court **DENIES** Tevin Bivins's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2441 (Doc. 1). This case is **DISMISSED with prejudice** and the Clerk is **DIRECTED** to close this case and enter judgment accordingly.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within sixty (60) days of the entry of judgment. *See* Fed. R. App. Proc. 4(a)(1)(B). A motion for leave to appeal in forma pauperis ("IFP") must

set forth the issues Petitioner plans to present on appeal. *See* Fed. R. App. Proc. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. Proc. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–726 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858–859 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the sixty (60)-day appeal deadline. *See* Fed. R. App. Proc. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this twenty-eight (28)-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 Petition. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED:   March 7, 2022**

> *s/ Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**